# First Judicial District of Pennsylvania

*51CR00047732011*
*Johnnie Simmons*

_____

*Trial (Jury) Volume 3*
*December 13, 2011*



_____

*First Judicial District of Pennsylvania*
*100 South Broad Street, Second Floor*
*Philadelphia, PA 19110*
*(215) 683-8000   FAX:(215) 683-8005*

*Original File 121311^Simmons.txt, 24 Pages*
*CRS Catalog ID: 12071456*

## Page 1

```
[1]        IN THE COURT OF COMMON PLEAS
[2]     FIRST JUDICIAL DISTRICT OF PENNSYLVANIA
[3]            CRIMINAL TRIAL DIVISION
[4]                     - - -
[5]
[6] COMMONWEALTH         : CP-51-CR-0004773-2011
                         :
[7]      V.              :
                         :
[8] JOHNNIE SIMMONS      :
[9]
                      - - -
[10]
       Courtroom 802, Criminal Justice Center
[11]
          Philadelphia, Pennsylvania
[12]
                      - - -
[13]
             December 13, 2011
[14]
                      - - -
[15]
                  Jury Trial
[16]
                  Volume  IV
[17]
                      - - -
[18]
[19] B E F O R E:  THE HONORABLE SANDY L. V. BYRD, J.
[20]
     APPEARANCES:
[21]
           STACY FORCHETTI, ESQUIRE
[22]       Assistant District Attorney
           For the Commonwealth
[23]
[24]       VINCENT LORUSSO, ESQUIRE
           Counsel for the Defendant
[25]
                 Jaclyne Wilson
```

## Page 2

[1] **THE COURT**:  We are back on the record in
[2] our trial case.  This is the case of Commonwealth
[3] vs. Johnnie Simmons.  The defendant is here with his
[4] attorney, Mr. Lorusso.  And the Commonwealth by
[5] Ms. Forchetti.
[6]         Counsel, as I advised the two of you at
[7] sidebar, the jury has a question.  I'm going to read
[8] it into the record and I'll have you respond as you
[9] see fit as to your position regarding how the Court
[10] should answer the concerns raised.
[11]        Question, Your Honor, we the jury have
[12] **the following questions**:  One, may we review all
[13] Commonwealth and defense exhibits minus the medical
[14] records?
[15]        Two, may we have the written description
[16] of all the charges?
[17]        Three, may we see --
[18] **MS. FORCHETTI**:  I believe it says "both,"
[19] Your Honor.
[20] **THE COURT**:  Both written testimony from
[21] Richard Alexander and Kyle Holman.  Signed, Juror
[22] No. 8.
[23]        So the first question, Mr. Lorusso, I'll
[24] hear from you and then from Ms. Forchetti.  May we
[25] review all Commonwealth and defense exhibits minus
            Jaclyne Wilson

## Page 3

[1] the medical records?  What's your view on that?
[2] **MR. LORUSSO**:  My view, Your Honor, would
[3] be that they should only see the photographs and the
[4] map.  No documentary evidence.
[5] **THE COURT**:  Commonwealth?
[6] **MS. FORCHETTI**:  Your Honor, I believe
[7] that's appropriate.  That they may place undue
[8] reliance on certain police documents.  Also, not
[9] every portion of every police document was admitted
[10] into evidence.
[11] **THE COURT**:  So you're in agreement with
[12] the defense then?
[13] **MS. FORCHETTI**:  I am.
[14] **THE COURT**:  Counsel, please correct me if
[15] I'm wrong, but I asked the two of you on yesterday
[16] anticipating such a question if you could go through
[17] the various exhibits and identify the ones that you
[18] agreed to go out and I believe that the ones that
[19] you articulated are those.  So I have the following:
[20] Commonwealth Exhibit 1, 2, 4, 5, 6 and 7 are
[21] photographs.  Commonwealth Exhibit 27, 26, 25, 24
[22] and 23 are also photographs, all of which should go
[23] out, and Commonwealth Exhibit 10, which is the photo
[24] spread and Defense Exhibit 1, which is the map.
[25]        Does anybody know what Commonwealth
            Jaclyne Wilson

## Page 4

[1] Exhibit 3 was?
[2] **MS. FORCHETTI**:  I do, Your Honor.  It
[3] was -- I believe, it was a police document.  It was
[4] the statement, the 75-483, of Officer Alexander.
[5] **THE COURT**:  So it was not a photograph?
[6] **MS. FORCHETTI**:  It was not.
[7] **THE COURT**:  So the aforementioned items,
[8] are we in agreement that they can go out?
[9] **MR. LORUSSO**:  Yes, Your Honor.
[10] **MS. FORCHETTI**:  Yes, Your Honor.
[11] **THE COURT**:  Okay.  I'm going to give that
[12] to Mr. Ferguson and the remainder of these will go
[13] back.
[14]        The second question, May we have a
[15] written description of all the charges?
[16] Mr. Lorusso?
[17] **MR. LORUSSO**:  As is within the Court's
[18] discretion my position would be that they -- if they
[19] want an oral instruction, that that should be again
[20] provided but appreciating that it's within the
[21] Court's discretion, I leave it to the Court.
[22] **THE COURT**:  It is a discretionary matter.
[23] I typically do not provide the written instructions
[24] but I always defer to counsel.
[25]        What's your position?
            Jaclyne Wilson

Page 5

[1]   **MS. FORCHETTI**: I think that's fine to
[2] give it to them. I think it might be preferable to
[3] have it read to them but I have no problem with them
[4] reviewing it on their own.
[5]   **THE COURT**: Off the record.
[6]   (Off the record.)
[7]   **THE COURT**: I advised counsel off the
[8] record that I had prepared these written
[9] instructions. I'm aware that it's my discretion but
[10] as I said before, I will abide by counsel's
[11] position.
[12]   Mr. Lorusso, what's your position?
[13]   **MR. LORUSSO**: I would ask Your Honor to
[14] read -- to recharge the jury on what they requested,
[15] I guess, assuming that that would answer their
[16] request.
[17]   **THE COURT**: Ma'am?
[18]   **MS. FORCHETTI**: I think that will be
[19] appropriate to recharge them on the counts.
[20]   **THE COURT**: Are you in agreement?
[21]   **MR. LORUSSO**: Yeah, and actually I guess,
[22] if Your Honor please, we're assuming that that's
[23] what they want, you know, reinstruction on the
[24] charges but that's not really what they've asked so
[25] I wonder --

Jaclyne Wilson

Page 6

[1]   **THE COURT**: If they asked for the written
[2] description of the charges, I assume that they
[3] want --
[4]   **MR. LORUSSO**: I guess I would assume
[5] that.
[6]   **THE COURT**: -- to be recharged.
[7]   **MR. LORUSSO**: I would assume that also.
[8] That would be my request.
[9]   **THE COURT**: All right. And the last one
[10] is, May we see both written testimony from Richard
[11] Alexander and Kyle Holman.
[12]   Mr. Lorusso?
[13]   **MR. LORUSSO**: Your Honor, I think as we
[14] had discussed, in light of the length of the
[15] testimony and for obvious other reasons, my request
[16] would be that Your Honor simply instruct them that
[17] they need to rely upon their own recollection of the
[18] testimony instead of having it reread to them.
[19]   **THE COURT**: Ms. Forchetti?
[20]   **MS. FORCHETTI**: Your Honor, I'm of a
[21] similar mind. I would also further instruct them
[22] that if they asked a more specific question, maybe
[23] we could accommodate that request.
[24]   **THE COURT**: I have no aversion to doing
[25] that except to point out to the two of you when we

Jaclyne Wilson

Page 7

[1] ask for specific, we ask the jury to identify a
[2] specific part of the testimony that they wanted,
[3] often time, and this is an illustration, one of the
[4] jurors in a case I had wanted to know if the witness
[5] testified that the truck was green or blue. So we
[6] identified the portion in the direct evidence where
[7] the witness makes a reference to the color of the
[8] truck and then the defense says, But I crossed on
[9] that, and the cross covers because typically you
[10] don't just zero in on one thing and be done with it,
[11] there are instances where it's been zeroed in on and
[12] then later on in the cross you come back to it, so
[13] the entire cross of the defense, arguably, covers
[14] what color the truck was. Just a thought.
[15]   **MS. FORCHETTI**: Okay.
[16]   **THE COURT**: All right.
[17]   **MR. LORUSSO**: I would object to throwing
[18] that out there in terms of giving them another
[19] option to request specifics.
[20]   **THE COURT**: The point is well taken
[21] except that if there is a particular area of
[22] disagreement amongst the jurors, and we are just
[23] speculating here, that can be easily resolved by a
[24] reference to the testimony and both of you agree
[25] it's in the direct and in the cross, then we should

Jaclyne Wilson

Page 8

[1] make every effort to address that. So it's
[2] problematic either way. All right.
[3]   Let's bring them out.
[4] (Jury enters the courtroom at 12:16 p.m.)
[5]   **THE COURT**: Good afternoon, ladies and
[6] gentlemen.
[7]   Would the foreperson please rise and
[8] identify yourself by seat number.
[9]   **JUROR FOREPERSON**: Juror No. 8,
[10] Your Honor.
[11]   **THE COURT**: Mr. Foreman, does the jury
[12] have a question or communication for the Court?
[13]   **JUROR FOREPERSON**: Yes, Your Honor, we
[14] do.
[15]   **THE COURT**: Would you read it exactly as
[16] it appears in your writing.
[17]   **JUROR FOREPERSON**: Yes, Your Honor.
[18] Number 1, may we review all Commonwealth's and
[19] defense exhibits minus the medical records?
[20]   Number 2, may we have the written
[21] description of all charges?
[22]   And lastly, may we please see both
[23] written testimonies from Officer Richard Alexander
[24] and Kyle Holman?
[25]   **THE COURT**: Thank you.

Jaclyne Wilson

Page 9

[1] **JUROR FOREPERSON**: Thank you, Your Honor.
[2] **THE COURT**: Ladies and gentlemen, you can
[3] appreciate that there are certain rules of court
[4] which governs what can and cannot go out into the
[5] deliberation room with the jury, and so I am unable
[6] to provide you with all of the exhibits because our
[7] Supreme Court prohibits certain documents being sent
[8] out with a deliberating jury.
[9] The following exhibits are permissible
[10] for purposes of sending out to a deliberating jury
[11] and they will, of course, be provided to you. They
[12] include the various photographs, Commonwealth's
[13] Exhibits 1, 2, 4, 5, 6, 7, 23, 24, 25, 26, 27 and in
[14] addition the photographic array, Commonwealth
[15] Exhibit 10, and the map which is Defense Exhibit 1
[16] will be provided to you. The other documents cannot
[17] be sent out as the rules prohibit same.
[18] Your third question asks, May we see both
[19] written testimony from Richard Alexander and Kyle
[20] Holman? Jurors are not permitted to have
[21] transcriptions of testimony in the deliberation
[22] room. In fact, as you might conclude, the testimony
[23] has not yet been transcribed. So even if it were
[24] available, it could not go out to you.
[25] There are instances when a jury can

Jaclyne Wilson

Page 10

[1] request and have read back portions of the testimony
[2] of a witness if there is some area that you can
[3] identify that you wish to have addressed. However,
[4] I want you to appreciate that despite the length of
[5] time that the case consumed, the testimony from
[6] Officer Alexander and Mr. Holman was not terribly
[7] long in length and you, ladies and gentlemen, paid
[8] great attention and of equal importance those who
[9] wished had the ability to take notes and you are
[10] instructed to rely upon your recollection and, of
[11] course, make use of your notes.
[12] The second question asks for a written
[13] description of all the charges and I am of the mind
[14] that you wish to have each of the offenses explained
[15] to you again, and I shall do that.
[16] Ladies and gentlemen, there are five
[17] crimes charged in this case: Attempted murder,
[18] aggravated assault, possession of an instrument of
[19] crime, carrying a firearm without a license and
[20] conspiracy. I shall define each in turn.
[21] First, attempted murder. The defendant
[22] has been charged with attempted murder. To find him
[23] guilty of this offense, you must find that the
[24] following three elements have been proven beyond a
[25] reasonable doubt. First, that the defendant did a

Jaclyne Wilson

Page 11

[1] certain act. Commonwealth alleges that he shot
[2] Charles Talbert.
[3] Second, that at the time of this alleged
[4] act the defendant had the specific intent to kill
[5] Charles Talbert. That is he had a fully formed
[6] intent to kill and was conscious of his own
[7] intention.
[8] And, third, that this act constituted a
[9] substantial step toward the commission of the
[10] killing the defendant intended to bring about. The
[11] specific intent to kill must be willful, deliberate
[12] and premeditated. The specific intent to kill,
[13] including premeditation, does not require planning
[14] or previous thought or any particular length of
[15] time. It can be formed in an instant. All that is
[16] necessary is that there be time enough so that the
[17] defendant can and does fully form an intent to kill
[18] and is conscious of that intention.
[19] When you are deciding whether the
[20] defendant had the specific intent to kill, you
[21] should consider all of the evidence regarding his
[22] words and conduct and attending circumstances that
[23] may show his state of mind. If you believe that the
[24] defendant intentionally used a deadly weapon on a
[25] vital part of the complainant's body, you may regard

Jaclyne Wilson

Page 12

[1] that as circumstantial evidence from which you may,
[2] if you choose, infer that the defendant had the
[3] specific intent to kill.
[4] What remains is a description of
[5] substantial step. A person cannot be guilty of an
[6] attempt to commit a crime unless he does an act that
[7] constitutes a substantial step toward the commission
[8] of that crime. An act is a substantial step if it
[9] is a major step toward the commission of a crime and
[10] also strongly corroborates the jury's belief that
[11] the person at the time he did that act had a firm
[12] intent to commit the crime. An act can be a
[13] substantial step even though other steps would have
[14] to be taken before the crime could be carried out.
[15] If after considering all of the evidence
[16] you find that the Commonwealth has proven the three
[17] elements just stated beyond a reasonable doubt, then
[18] you should find the defendant guilty of attempted
[19] murder. Otherwise, you must find him not guilty of
[20] that offense.
[21] The second offense charged is aggravated
[22] assault. The defendant has been charged with
[23] aggravated assault. To find him guilty of this
[24] offense, you must find that each of the following
[25] two elements have been proven beyond a reasonable

Jaclyne Wilson

Page 13

**doubt**: First, that the defendant caused serious bodily injury to Charles Talbert. Serious bodily injury is bodily injury that creates a substantial risk of death or that causes serious permanent disfigurement or protracted loss or impairment of the function of any bodily member or organ.

And, second, that the defendant acted either intentionally, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life. What do we mean by intentionally, knowingly or recklessly? A person acts intentionally with respect to serious bodily injury when it is his conscious object or purpose to cause such injury. A person acts knowingly with respect to serious bodily injury when he is aware that it is practically certain that his conduct will cause such a result. A person acts recklessly with respect to serious bodily injury when he consciously disregards a substantial and unjustifiable risk that serious bodily injury will result from his conduct.

The risk must be of such a nature and degree that considering the nature and intent of the defendant's conduct and the circumstances known to him, its disregard involves a gross deviation from the standard of conduct that a reasonable person

Page 14

would observe in the defendant's situation. It is shown by the kind of reckless conduct from which a life threatening injury is almost certain to occur.

If after considering all of the evidence you find that the Commonwealth has proven the elements just stated beyond a reasonable doubt, then you should find the defendant guilty of aggravated assault. Otherwise, you must find him not guilty of this crime.

The third offense charged is possession of an instrument of crime; to wit, a firearm. In order to find the defendant guilty of possessing a criminal instrument as charged in this case you must be satisfied that the following three elements have been proven beyond a reasonable doubt: First, that the defendant possessed a certain item. That is a firearm. For a person to possess an item, he must have the power to control and the intent to control that item.

And, second, that the item was an instrument of crime. What is an instrument of crime? An instrument of crime is either anything specially made for criminal use or anything specially adapted for criminal use or anything that is used for criminal purposes and possessed by the

Page 15

defendant at the time of the alleged offense under circumstances not manifestly appropriate for lawful uses it may have. That a thing could somehow facilitate the possible commission of a crime is not enough. To be an instrument of crime a thing must be something that the defendant would need to use in the commission of the underlying offense.

And, third, that the defendant possessed that item with the intent to employ it criminally. That is with the intent to attempt or to commit a crime with it. The Commonwealth has charged here that the crime the defendant intended to commit with the instrument alleged was assault and/or murder.

If after considering all of the evidence you find that the Commonwealth has proven the elements just stated beyond a reasonable doubt, then you should find the defendant guilty of possession of an instrument of crime. Otherwise, you must find him not guilty of this offense.

The next offense charged against the defendant is carrying a firearm without a license. The defendant has been charged with carrying a firearm without a license in violation of Section 6106 of the Uniform Firearms Act. To find him guilty of this offense, you must find that each of

Page 16

the following three elements have been proven beyond **a reasonable doubt**: First, that the defendant carried a firearm concealed on or about his person.

What is a firearm? Any pistol or revolver with a barrel less than 15 inches, shotgun with a barrel less than 18 inches, rifle with a barrel less than 16 inches or any pistol, revolver, rifle or shotgun with an overall length of less than 26 inches. To be a firearm the specific object charged must be operable. That is capable of firing a projectile.

Second, that the defendant was not in his place of abode. That is his home or his fixed place of business.

And, third, that the defendant did not have a valid and lawfully issued license for carrying a firearm.

If after considering all of the evidence you find that the Commonwealth has proven the three elements just stated beyond a reasonable doubt, then you should find the defendant guilty of carrying a firearm without a license. Otherwise, you must find him not guilty of this offense.

Lastly, the defendant is charged with conspiracy. He's charged with conspiracy to commit

Jaclyne Wilson

Page 17

assault and/or murder. In Pennsylvania, joining a conspiracy or creating a conspiracy is itself a crime. Even if the crime the people are planning to commit is not carried out, the members of a conspiracy are still responsible for the distinct crime of conspiracy.

In general terms, a conspiracy is an agreement between two or more persons to commit a crime. A conspiracy exists once two conditions are met. There is an agreement and one of the members then commits some act to help achieve the goal of the conspiracy.

The first element of conspiracy is an agreement. It can be stated in words or unspoken but acknowledged. But it must be an agreement in the sense that two or more people have come to an understanding that they agree to act together to commit a crime or crimes. Their agreement does not have to cover the details of how the crime will be committed. Nor does it have to call for all of them to participate in actually committing the crime or crimes. They can agree that one of them will do the job. What is necessary is that the parties do agree, in other words, do come to a firm, common understanding that a crime will be committed.

Jaclyne Wilson

Page 18

Although the agreement itself is the essence of the conspiracy, a defendant cannot be convicted of conspiracy unless he or a fellow conspirator does something more, does an overt act in furtherance of the conspiracy. The overt act is an act by any member of the conspiracy that would serve to further the goal of the conspiracy. The overt act can be criminal or noncriminal in itself as long as it is designed to put the conspiratorial agreement into effect. This is to show that the parties have a firm agreement and are not just thinking or talking about committing a crime. The overt act shows that the conspiracy has reached the action stage. If a conspirator actually commits or attempts to commit the agreed upon crime or crimes, that obviously would be an overt act in furtherance of their conspiracy. But a small act or step that is much more preliminary and a lot less significant can satisfy the overt act requirement.

The Commonwealth may prove a conspiracy by direct evidence or by circumstantial evidence. People who conspire often do so secretly and cover up afterwards. In many conspiracy trials, circumstantial evidence is the best or only evidence on the question of whether there was an agreement,

Jaclyne Wilson

Page 19

that is a common understanding and whether the conspirators shared the intent to promote or facilitate the commission of the object crime or crimes. Thus, you may, if you think it proper, infer that there was a conspiracy from the relationship, conduct and acts of the defendant and his alleged coconspirator and the circumstances surrounding their activities. However, the evidence of this must support your conclusion beyond a reasonable doubt.

In this case the Commonwealth alleges that the defendant conspired with another unknown person. In this case the Commonwealth alleges that the crime or crimes of assault and/or murder were the objective of the conspiracy. In this case the Commonwealth alleges that the following was an overt **act**: To wit, the defendant shot the complainant.

In order to find the defendant guilty of conspiracy to commit assault and/or murder, you must be satisfied that the following three elements have been proven beyond a reasonable doubt: First, that the defendant agreed with the other person that one or both of them would engage in conduct for the planning and commission of the crime assault and/or murder.

Jaclyne Wilson

Page 20

Second, that the defendant and the other person intended to promote or facilitate the commission of that crime or those crimes, assault and/or murder. In other words, they shared the intention to bring about that crime or those crimes or to make it easier to commit the crime assault and/or murder.

And, third, that the defendant or the other person did the act that is alleged to have been an overt act and did it in furtherance of their conspiracy. As a general rule, if conspirators have agreed to commit a crime and after that one of the conspirators does any act to carry out or advance their agreement, then he has done an overt act in furtherance of their conspiracy. The other conspirator does not have to participate in the act or even know about it. In a sense they are partners and like partners they are responsible for each others actions.

So, ladies and gentlemen, I have redefined the offenses charged. You should know that you may and you should call on the Court if you have any additional concerns, questions, comments or statements. I have identified for you the items that can be sent out and they will be sent out.

Jaclyne Wilson

Page 21

[1] So with that I am going to ask you,
[2] ladies and gentlemen, to return and continue your
[3] deliberations.
[4]     **JUROR FOREPERSON**: Thank you, Your Honor.
[5]     **THE COURT**: Thank you.
[6] (Jury exits the courtroom at 12:39 p.m.)
[7]     **THE COURT**: Let the record reflect that
[8] the jurors have left the room. I'm going to hand
[9] counsel the agreed upon exhibits so that it's clear
[10] to the two of you, and I want you to go through it
[11] and make sure that's what we agreed upon, so there's
[12] nothing going out that you have not agreed upon.
[13]     (Pause.)
[14]     **THE COURT**: Mr. Lorusso?
[15]     **MR. LORUSSO**: That's what we agreed upon,
[16] Your Honor.
[17]     **THE COURT**: Any objection?
[18]     **MR. LORUSSO**: No, Your Honor.
[19]     **MS. FORCHETTI**: No, Your Honor.
[20]     **THE COURT**: Thank you both. If you have
[21] any additional words of wisdom, I'll hear it.
[22]     **MR. LORUSSO**: I don't.
[23]     **MS. FORCHETTI**: Not at this time.
[24]     **THE COURT**: Okay. All right. Their
[25] lunch is here. I know that the two of you are

Jaclyne Wilson

Page 22

[1] entitled to lunch and I suggest that you should be
[2] free for an hour and thereafter either return or be
[3] some place where we can reach you.
[4]     (Deliberations.)
[5]     **THE COURT**: We are back on the record in
[6] our trial case, Commonwealth vs. Johnnie Simmons,
[7] CP-51-CR-0004773-2011. Mr. Simmons is here with his
[8] attorney, Mr. Lorusso. The Commonwealth by
[9] Ms. Forchetti.
[10]     Counsel, it's getting on to ten minutes
[11] till 5:00. I'm inclined to recess until tomorrow
[12] morning. If you have an alternative approach, I'll
[13] hear. Ms. Forchetti?
[14]     **MS. FORCHETTI**: No. I believe that's
[15] appropriate, Your Honor. They haven't communicated
[16] to us that they are at all close or asked any
[17] questions.
[18]     **THE COURT**: They had the question
[19] earlier, which I answered in the presence of the
[20] attorneys and the defendant. I've not heard
[21] anything. There had not been any communications
[22] since then. So they are obviously working. I am
[23] reluctant to make any inquiries unless the two of
[24] you agree that any inquiry is appropriate. We can
[25] either wait until 5:00 and send them home or bring

Jaclyne Wilson

Page 23

[1] them out now and send them home.
[2]     **MS. FORCHETTI**: I don't think ten minutes
[3] will make much of a difference, Your Honor.
[4]     **MR. LORUSSO**: That would be my thought
[5] also, Your Honor.
[6]     **THE COURT**: What?
[7]     **MR. LORUSSO**: I'm sorry. That we just
[8] bring them out now.
[9]     **THE COURT**: If you're in agreement,
[10] that's what I'll do.
[11]     **MS. FORCHETTI**: Okay.
[12]     **THE COURT**: By the time we've dismissed
[13] them, it will be five o'clock. So it's actually
[14] five minutes to 5:00. That clock is five minutes
[15] slow so the attorneys are not late to the courtroom.
[16] (Jury enters the courtroom at 4:55 p.m.)
[17]     **THE COURT**: Good afternoon, ladies and
[18] gentlemen. It is, as you can see, coming up on five
[19] o'clock and you, ladies and gentlemen, have been in
[20] deliberations since 9:00 this morning. So I think
[21] it's appropriate that we recess for the day. I must
[22] instruct you anew to keep an open mind. Don't
[23] discuss the case while you're apart. Don't permit
[24] anyone to discuss the case with you. Enjoy your
[25] evening and we will resume tomorrow morning at nine

Jaclyne Wilson

Page 24

[1] o'clock.
[2]     Thank you, ladies and gentlemen.
[3] (Jury exits the courtroom at 4:56 p.m.)
[4]     **THE COURT**: If everyone would remain in
[5] place until the jurors have left the floor, I'd
[6] appreciate it.
[7]     (Hearing adjourned at 5:00 p.m.)

Jaclyne Wilson

Page 25

```
[1]             CERTIFICATE
[2]
[3] I HEREBY CERTIFY THAT THE PROCEEDINGS AND EVIDENCE ARE
[4] CONTAINED FULLY AND ACCURATELY IN THE NOTES TAKEN BY ME ON THE
[5] TRIAL OF THE ABOVE CAUSE, AND THIS COPY IS A CORRECT
[6] TRANSCRIPT OF THE SAME.
[7]
[8]
[9]
[10]
[11]         JACLYNE A. CRAIGHEAD
[12]         OFFICIAL COURT REPORTER
[13]
[14]
[15]
[16]
[17] (THE FOREGOING CERTIFICATION OF THIS TRANSCRIPT DOES NOT APPLY
[18] TO ANY REPRODUCTION OF THE SAME BY ANY MEANS UNLESS UNDER THE
[19] DIRECT CONTROL AND/OR SUPERVISION OF THE CERTIFYING REPORTER.)
[20]
[21]
[22]
[23]
[24]
[25]
              Jaclyne Wilson
```



Court Reporting System (Generated 2023/03/07 14:29:27)

# Lawyer's Notes
_____

