# First Judicial District of Pennsylvania

*51CR00047732011*
*Johnnie Simmons*

_____

*Trial (Jury) Volume 4*
*December 14, 2011*



_____

*First Judicial District of Pennsylvania*
*100 South Broad Street, Second Floor*
*Philadelphia, PA 19110*
*(215) 683-8000   FAX:(215) 683-8005*

*Original File 121411^Simmons.txt, 17 Pages*
*CRS Catalog ID: 12071456*

## Page 1

```
         IN THE COURT OF COMMON PLEAS
      FIRST JUDICIAL DISTRICT OF PENNSYLVANIA
             CRIMINAL TRIAL DIVISION

                    - - -

COMMONWEALTH       :  CP-51-CR-0004773-2011
                   :
       V.          :
                   :
JOHNNIE SIMMONS    :

                    - - -

        Courtroom 802, Criminal Justice Center
             Philadelphia, Pennsylvania

                    - - -

               December 14, 2011

                    - - -

                   Jury Trial
                   Volume V

                    - - -

B E F O R E:  THE HONORABLE SANDY L. V. BYRD, J.

  APPEARANCES:

        STACY FORCHETTI, ESQUIRE
          Assistant District Attorney
          For the Commonwealth

        VINCENT LORUSSO, ESQUIRE
          Counsel for the Defendant

                   Jaclyne Wilson
```

## Page 2

**THE COURT**: This is the Commonwealth vs. Johnnie Simmons, CP-51-CR-0004773-2011. Mr. Simmons is here with his attorney, Mr. Lorusso. The Commonwealth by Ms. Forchetti.

Counsel, as I told the two of you off the record, there is a question, rather two questions, from the jury. I'm going to read the questions to you on the record and have the two of you respond, tell me how you wish me to answer the jurors' questions.

Your Honor, we the jury have the **following questions**: One, may we have the 4/26/11 preliminary hearing testimony of Mr. Talbert reread to us?

And, two, may we have Officer Edmiston's report in reference to Michael Bell, slash, 75-483 **A,** pedestrian stop? Signed, Juror No. 8.

What I'm going to do, Mr. Lorusso, is to hear first from you and I'll take them in the inverted fashion. Let's address Question No. 2 first. It says, May we have Edmiston's report regarding Bell. What's your position?

**MR. LORUSSO**: My position would be that Your Honor should not allow that to go to the jury. It -- well, it's a police report. It also contains

Jaclyne Wilson

## Page 3

actually statement or information apparently from the witness, Michael Bell, who did not testify in this case.

**THE COURT**: Commonwealth?

**MS. FORCHETTI**: Your Honor, the document they're asking for technically doesn't even exist. I would agree with Mr. Lorusso that they can't have Officer Edmiston's prepared 48.

**THE COURT**: Tell me if either of you have an objection to this comment to the jury regarding Question No. 2. I propose to tell them the that 75-48 A report by Officer Edmiston regarding Michael Bell constitutes inadmissible hearsay as Mr. Bell did not testify. Further, the rules of court prohibit the jury from being provided that document during deliberations.

**MS. FORCHETTI**: Your Honor, my objection to it would be first of all that Officer Edmiston did not prepare a 48 A. He only prepared a 75-48.

**THE COURT**: And what else?

**MS. FORCHETTI**: And I would just ask that you just say that the police paperwork cannot go back to them.

**THE COURT**: Mr. Lorusso?

**MR. LORUSSO**: Your Honor, I have honestly

Jaclyne Wilson

## Page 4

no problem either way there. If Your Honor --

**THE COURT**: You just don't want it to go back?

**MR. LORUSSO**: Correct.

**THE COURT**: Okay. Understood.

Second, I shall read to you the first question and ask -- and I'll have you answer first, Ms. Forchetti. May we have the preliminary hearing testimony of the complainant?

**MS. FORCHETTI**: Your Honor, I believe that's an appropriate request. I would ask that you accommodate their request.

**THE COURT**: Mr. Lorusso?

**MR. LORUSSO**: Your Honor, I would object to that because of the fact that the nature of the preliminary hearing was such that it did not allow a full cross-examination or confrontation of the witness. So to present just that side basically of direct testimony would give undue weight to a statement that was without any test or without any cross-examination.

Also, though appreciating that if Your Honor is inclined to do that, I would ask to -- if Your Honor is inclined to allow that testimony to be read back, I would ask that it be read back in the

Jaclyne Wilson

Page 5

[1] context of the testimony and I'm assuming that
[2] that's what we'd be doing that was presented at
[3] trial not just the raw reading of the notes of
[4] testimony but Ms. Forchetti's questioning and
[5] Mr. Talbert's responses to those questions at the
[6] trial because that would be, I would think, the
[7] evidence.
[8]         **THE COURT**: Ms. Forchetti?
[9]         **MS. FORCHETTI**: Your Honor, I think it
[10] would be cleaner just to read the testimony as it
[11] stood as you had told the jury that they may
[12] consider these notes as suggestive of evidence.
[13] That's what they asked for is specifically --
[14]         **THE COURT**: They're not entitled to notes
[15] of testimony. The only reason they're entitled to
[16] this is because you introduced it in your case in
[17] chief. And the only way it comes in would be
[18] through your questions and his responses.
[19]         **MS. FORCHETTI**: Okay.
[20]         **THE COURT**: It's obviously not as clean
[21] as the preliminary hearing testimony because he was,
[22] it appeared to me, cooperative with the Commonwealth
[23] at the preliminary hearing and not cooperative with
[24] the Commonwealth at the trial. But they're not
[25] entitled to a sanitized version of the notes of the

                Jaclyne Wilson

Page 6

[1] preliminary hearing. They're entitled to what was
[2] presented to them at the trial.
[3]         **MS. FORCHETTI**: Okay.
[4]         **THE COURT**: So is that how,
[5] Ms. Craighead, it has been identified by you?
[6]         **COURT REPORTER**: Yes, Your Honor.
[7]         **THE COURT**: Tell me the first -- where it
[8] starts.
[9]         **COURT REPORTER**: "MS. FORCHETTI: Your
[10] Honor, I would ask to mark the notes of testimony as
[11] Commonwealth C-11?
[12]         "THE COURT: They may be marked.
[13]         "QUESTION: Now back in April of this
[14] year, 2011, it was me as the district attorney and
[15] Mr. Fiore as the defense attorney. Do you remember
[16] that?
[17]         "ANSWER: No."
[18]         **THE COURT**: All right. So that's where
[19] we'll start. What's the last bit of that
[20] examination?
[21]         **COURT REPORTER**: "QUESTION: And do you
[22] remember what the description was? If you don't,
[23] that's okay. And your answer was, Light-skinned,
[24] braids. Do you remember that?
[25]         "ANSWER: No.

                Jaclyne Wilson

Page 7

[1]         "QUESTION: Okay. That was the end of
[2] your testimony on April 26th of 2011, that ended the
[3] preliminary hearing. You don't remember a single
[4] word of it?
[5]         "ANSWER: No, I don't."
[6]         **THE COURT**: All right. Our reporter has
[7] identified that portion of the examination which is
[8] relevant and admissible pursuant to the jurors'
[9] questions so I will permit it. It commences on page
[10] 159 and ends on page 178. All right.
[11]         Counsel, ready yourself. We're about to
[12] bring the jurors in
[13]         (Pause.)
[14]         **THE COURT**: Counsel, let the record
[15] reflect that while we were awaiting our reporter to
[16] isolate that portion of the transcript requested by
[17] this jury, they have presented yet another question.
[18] **It reads as follows**: Please clarify if defense is
[19] legally required to turn over Mr. Talbert's letter
[20] to the prosecution. Signed, Juror No. 8.
[21]         We can go off the record so you can let
[22] that sink in and think about how you wish me to
[23] respond.
[24]         (Off the record.)
[25]         **THE COURT**: Ladies and gentlemen, we're

                Jaclyne Wilson

Page 8

[1] about to bring the jurors out.
[2] (Jury enters the courtroom at 11:42 a.m.)
[3]         **THE COURT**: Good morning, ladies and
[4] gentlemen.
[5]         Would the foreperson please rise and
[6] identify yourself by seat number.
[7]         **JUROR FOREPERSON**: Juror No. 8,
[8] Your Honor.
[9]         **THE COURT**: Mr. Foreman, does the jury
[10] have communications and/or questions for the Court?
[11]         **JUROR FOREPERSON**: We do, Your Honor. We
[12] have three.
[13]         **THE COURT**: Would you start -- I ask
[14] again you read them exactly as they appear in your
[15] writing.
[16]         **JUROR FOREPERSON**: Yes, Your Honor.
[17]         Number 1, may we have the April 26th,
[18] 2011, preliminary hearing testimony of Mr. Talbert
[19] reread to us?
[20]         Number 2, may we have Officer Edmiston's
[21] report in reference to Michael Bell, slash, 75-483
[22] **A,** pedestrian stop?
[23]         And then lastly, Your Honor, please
[24] clarify is defense legally required to turn
[25] Mr. Talbert's letter over to the prosecution.

                Jaclyne Wilson

Page 9

[1] **THE COURT**: Thank you.
[2] **JUROR FOREPERSON**: Thank you, Your Honor.
[3] **THE COURT**: Ladies and gentlemen, it's
[4] important that we all appreciate the various roles
[5] assigned to each of us. The Commonwealth's attorney
[6] has an obligation to present evidence in an effort
[7] to prove guilt beyond a reasonable doubt. Defense
[8] counsel's role is to defend his client against the
[9] Commonwealth's effort to prove his guilt in
[10] accordance with the law. You, ladies and gentlemen
[11] of the jury, are fact finders. Your role is to
[12] determine from the evidence presented what the facts
[13] are. You have an obligation once you determine the
[14] facts to apply the law as I instruct you in the law
[15] to those facts and then decide whether the
[16] Commonwealth has or has not proven guilt beyond a
[17] reasonable doubt. My duty, as I articulated in
[18] redefining yours, is to be the arbiter of the law.
[19] It's my responsibility as the presiding judge to
[20] instruct you in the law of this case.
[21]    Taking your questions in reverse order.
[22] I must tell you that the question has absolutely
[23] nothing to do with your role as fact finders.
[24] Whether or not the letter from Mr. Talbert was
[25] turned over by the defense to the Commonwealth

Jaclyne Wilson

Page 10

[1] pursuant to a legal obligation is totally outside
[2] the jury's proper consideration. You should set
[3] aside the evaluation of matters peripheral to your
[4] duty as the fact finder and address yourself to the
[5] evidence that was presented in this courtroom.
[6] Neither side can now supplement the record. Neither
[7] side can present additional evidence assuming there
[8] is any additional evidence. The evidence in this
[9] case is closed and your obligation is to determine
[10] from that evidence the facts, apply the law to those
[11] facts and then make a decision as to whether the
[12] Commonwealth has or has not proven guilt beyond a
[13] reasonable doubt.
[14]    That brings me to the second question.
[15] There are rules which govern what can and cannot
[16] come before a jury and one of the rules is that you
[17] may not have that document in the jury room during
[18] your deliberations. Your obligation is to
[19] collectively recall the evidence that was before you
[20] and to determine the facts from that evidence. You
[21] may not have a 75-48, 75-48 A, 75-483. The rules
[22] prohibit it and I have an obligation to enforce the
[23] rules.
[24]    The very first question you asked should
[25] **be answered thusly**: Generally, a jury is not

Jaclyne Wilson

Page 11

[1] entitled to testimony of a witness from a
[2] preliminary hearing. However, in this case where
[3] Charles Talbert's preliminary hearing testimony was
[4] presented to you during this trial, our court's
[5] permit the reporter to isolate that testimony and to
[6] read it back to you. That is properly before you
[7] and we shall have it read back.
[8]    So if you would be so patient as to give
[9] our reporter an opportunity. She has isolated it.
[10] She will now read back to you that portion which
[11] you've asked for and it's, approximately, 19 to 20
[12] pages. Bear with us for a moment and when she's
[13] ready, she will commence the read back.
[14]    (Court reporter read the testimony of
[15] Charles Talbert from 12/6/11 from page 125, Line 13
[16] to page 148, Line 9 as requested.)
[17] **THE COURT**: Ladies and gentlemen, we have
[18] caused our reporter to read back that portion of the
[19] testimony you requested. I now request that the 12
[20] of you return to the jury room and resume your
[21] deliberations. Please be advised that if there is
[22] an additional question or if you have additional
[23] requests, don't hesitate to call on the Court.
[24] Thank you.
[25]    (Jury exits the courtroom at 12:15 p.m.)

Jaclyne Wilson

Page 12

[1] **THE COURT**: Let the record reflect the
[2] jurors have left the room.
[3]    Is there anything else, Ms. Forchetti?
[4] **MS. FORCHETTI**: No, Your Honor.
[5] **THE COURT**: Mr. Lorusso?
[6] **MR. LORUSSO**: No, Your Honor.
[7] **THE COURT**: Thank you, sir. Thank you,
[8] ma'am.
[9]    (Deliberations.)
[10] **THE COURT**: All right. We're back on the
[11] record. Mr. Simmons is here with his attorney,
[12] Mr. Lorusso. The Commonwealth by Ms. Forchetti.
[13]    There is a new question, counsel. It
[14] reads, May we please have Officer Edmiston's
[15] testimony read to us.
[16]    It's my recollection Officer Edmiston was
[17] the first officer on the scene.
[18] **MS. FORCHETTI**: That is correct.
[19] **THE COURT**: And that he broadcast some
[20] initial flash. That there is a lack of clarity as
[21] to where or who the source of that flash is or was.
[22]    Is that right, Ms. Forchetti?
[23] **MS. FORCHETTI**: That is my recollection,
[24] Your Honor.
[25] **THE COURT**: Mr. Lorusso, what's your

Jaclyne Wilson

Page 13

[1] position as to how we proceed?
[2] **MR. LORUSSO**: My position is Your Honor
[3] direct the jury to rely on their recollection of the
[4] evidence.
[5] **THE COURT**: Ms. Forchetti?
[6] **MS. FORCHETTI**: Your Honor, I would
[7] agree.
[8] **THE COURT**: All right. Thank you, ma'am.
[9]   Let's bring the jurors out.
[10] (Jury enters the courtroom at 2:23 p.m.)
[11] **THE COURT**: Good afternoon, ladies and
[12] gentlemen.
[13]   Will the foreperson please rise and
[14] identify yourself by seat number.
[15] **JUROR FOREPERSON**: Juror No. 8,
[16] Your Honor.
[17] **THE COURT**: Mr. Foreman, does the jury
[18] have a communication for the Court?
[19] **JUROR FOREPERSON**: We do, Your Honor.
[20] **THE COURT**: Would you read it as it
[21] appears in your writing, sir.
[22] **JUROR FOREPERSON**: Yes, Your Honor. May
[23] we please have Officer Edmiston's testimony read to
[24] us?
[25] **THE COURT**: Thank you.
        Jaclyne Wilson

Page 14

[1] **JUROR FOREPERSON**: Thank you, Your Honor.
[2] **THE COURT**: Ladies and gentlemen, this
[3] was a fairly short trial in terms of its duration.
[4] My recollection is that testimony consumed,
[5] approximately, two working days. I'm mindful of the
[6] fact that there was a hiatus. We were unable to
[7] meet on Thursday and Friday because of circumstances
[8] outside the control of the principles, but you,
[9] ladies and gentlemen, gave the case your full
[10] attention. You were all permitted to take notes.
[11]   In light of everything I've said, you
[12] ladies and gentlemen, must, you are obliged to rely
[13] upon your recollection of the evidence. Please, do
[14] so and continue your deliberations.
[15]   Thank you.
[16] (Jury exits the courtroom at 2:25 p.m.)
[17]   (Deliberations.)
[18] **THE COURT**: Counsel, I'm going to read to
[19] you an e-mail that was handed to me by Mr. Menna on
[20] behalf of one of your jurors. I have taken no
[21] actions. Nor do I intend to.
[22]   It is addressed to Allie Ramsey, account
[23] executive from Terri Fornek it reads: Hi Allie, as
[24] it relates to your productivity, the minimum is
[25] three new deals and we will, of course, consider
        Jaclyne Wilson

Page 15

[1] prorating that for your time off due to jury duty as
[2] you should not be penalized for fulfilling your
[3] responsibilities as a citizen but, again, three new
[4] deals is the minimum. So you should strive to hit
[5] that number in the days you are able to work during
[6] the month. We can discuss more once your jury duty
[7] wraps up and we know exactly how many days you were
[8] off. Company policy allows as many days off
[9] necessary to fulfill your jury duty obligation.
[10] There is an option in eTime to code those days off
[11] as jury did you. I believe Jim is already aware of
[12] your jury duty obligation, so if you are unable to
[13] update your eTime, please make sure he knows so he
[14] can update on your behalf.
[15]   Once you have completed jury duty, please
[16] make sure to fax or scan a copy of the certificate
[17] to HR for our records. Thanks, Terri.
[18]   This is the woman who I believe initially
[19] said jury duty would be a hardship because her
[20] obligation to work. She then changed it and I
[21] declined to grant her hardship. She submitted this
[22] to Mr. Menna to give to me today. I initially
[23] thought that perhaps I should contact the employer
[24] but given the language of this letter, the employer
[25] is not putting any undue pressure on her so I don't
        Jaclyne Wilson

Page 16

[1] think there is anything to do. But in an abundance
[2] of caution, I thought I should share it, and I have.
[3]   Anything?
[4] **MR. LORUSSO**: I have nothing.
[5] **MS. FORCHETTI**: Thank you, Your Honor.
[6]   (Deliberations.)
[7] **THE COURT**: We are back on the record. I
[8] have a note from the jury. Before I read it, let
[9] the record reflect Mr. Simmons is here with his
[10] attorney, Mr. Lorusso. And Ms. Forchetti is here
[11] for the Commonwealth.
[12] **The note reads**: Your Honor, due to the
[13] lateness of the hour, we would like to adjourn for
[14] the day and begin first thing tomorrow morning on
[15] Thursday. Signed, Juror No. 8.
[16]   Any objection, counsel?
[17] **MR. LORUSSO**: No, Your Honor.
[18] **MS. FORCHETTI**: No, Your Honor.
[19] **THE COURT**: Okay. Let's bring them out.
[20] I'll release them from the box.
[21] (Jury enters the courtroom at 4:07 p.m.)
[22] **THE COURT**: Good afternoon, ladies and
[23] gentlemen.
[24]   Mr. Foreperson, would you please rise and
[25] identify yourself by seat number.
        Jaclyne Wilson

Page 17

[1] **JUROR FOREPERSON**: Juror No. 8,
[2] Your Honor.
[3] **THE COURT**: Do you have a communication
[4] for the Court, sir?
[5] **THE DEFENDANT**: We do, Your Honor.
[6] **THE COURT**: Would you please read it.
[7] **JUROR FOREPERSON**: Due to the lateness of
[8] the hour, we would like to adjourn for the day and
[9] begin first thing tomorrow on Thursday.
[10] **THE COURT**: Thank you.
[11] **JUROR FOREPERSON**: Thank you, Your Honor.
[12] **THE COURT**: Your request is granted.  We
[13] will recess now and commence tomorrow morning at
[14] nine o'clock. I'm obliged to remind you all with
[15] **the following instructions**: Keep an open mind.
[16] Don't discuss the case amongst yourselves. Please
[17] don't permit anyone to discuss the case with you.
[18] Enjoy your evening. We'll see you all back here
[19] tomorrow morning. We'll commence at nine o'clock.
[20] (Jury exits the courtroom at 4:09 p.m.)
[21] (Hearing adjourned at 4:13 p.m.)
[22]
[23]
[24]
[25]

Jaclyne Wilson

Page 18

[1] CERTIFICATE
[2]
[3] I HEREBY CERTIFY THAT THE PROCEEDINGS AND EVIDENCE
[4] ARE CONTAINED FULLY AND ACCURATELY IN THE NOTES
[5] TAKEN BY ME ON THE TRIAL OF THE ABOVE CAUSE, AND
[6] THIS COPY IS A CORRECT TRANSCRIPT OF THE SAME
[7]
[8]
[9]
[10]
[11] JACLYNE A. CRAIGHEAD
[12] OFFICIAL COURT REPORTER
[13]
[14]
[15]
[16]
[17] (THE FOREGOING CERTIFICATION OF THIS TRANSCRIPT DOES
[18] NOT APPLY TO ANY REPRODUCTION OF THE SAME BY ANY
[19] MEANS UNLESS UNDER THE DIRECT CONTROL AND/OR
[20] SUPERVISION OF THE CERTIFYING REPORTER.)
[21]
[22]
[23]
[24]
[25]

Jaclyne Wilson

Court Reporting System (Generated 2023/03/07 14:29:48)

# Lawyer's Notes
_____

