IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JOHNNIE SIMMONS, | : | CIVIL ACTION |
|    Petitioner, | : | |
| | : | |
| v. | : | |
| | : | |
| MARK GARMAN, et. al., | : | NO. 19–2624 |
|    Respondents. | : | |

### RESPONDENTS' OBJECTION TO THE REPORT AND RECOMMENDATION

Petitioner Johnnie Simmons, a Pennsylvania state prisoner, is currently incarcerated for conspiracy to commit murder. Before this Court is Simmons's counseled petition for habeas corpus. ECF Nos. 17, 53. On April 30, 2024, Magistrate Judge Carol Sandra Moore Wells issued a report and recommendation that Simmons's petition for writ of habeas corpus should be granted as to the *Brady* claim contained in his December 19, 2023 amendment to the habeas petition. While conceding it was a "close question," Judge Wells found that interview notes that were suppressed from Simmons at trial were material in violation of *Brady v. Maryland*, 373 U.S. 83 (1963). Respondents now respectfully object to the recommendation that relief should be granted on that basis. *See* 28 U.S.C. § 636(b)(1)(C).

The suppressed notes described statements that the victim of the shooting, Charles Talbert, had made to police. ECF No. 56 at 13–15. The notes were made a few days after Talbert had provided a signed statement

1

to the assigned detective. The notes indicated that Talbert had reconsidered and rejected a suspicion he had shared with the detective: that a one-time foe known as T.I. might have been behind the shooting. The notes also reported that Talbert raised the prospect that two other individuals, Sergio Hyland and Christopher Edge, may have had something to do with the shooting as retribution for Talbert's prior testimony against them in a murder case.

Judge Wells reasoned that (1) disclosure of the suppressed notes would have allowed trial counsel to investigate whether Hyland or Edge may have been connected to "someone other than" Simmons who trial counsel could argue was an alternative suspect; (2) police failure to look into Hyland or Edge could have allowed trial counsel to impeach the investigation; and (3) the notes could have formed the basis for cross-examination of Talbert to cast doubt on his credibility and specifically his theory that T.I. was behind the shooting. Respondents respectfully disagree that the notes were material.

The idea that the notes may have provided the starting point for an investigation leading to an alternative suspect is mere speculation. The standard for materiality is that "disclosure of the suppressed evidence to competent counsel would have made a different result reasonably probable." *Kyles v. Whitley*, 514 U.S. 419, 441 (1995). The mere possibility that disclosure of the suppressed evidence could lead trial counsel to an exculpatory alternative suspect is not enough. *See United States v. Georgiou*, 777 F.3d 125, 141 (3d Cir. 2015). Under longstanding Pennsylvania evidence law, criminal defendants are entitled to show "proof of facts showing the commission of a crime by someone else" as long as the proof meets the standard for relevance and is not otherwise excluded. *Commonwealth v.*

2

*Ward*, 605 A. 2d 796, 797 (Pa. 1992). Thus, it would not have sufficed for Simmons to merely make reference to Talbert's speculation in the notes that Hyland and Edge had a motive to shoot him; Simmons would have needed to offer some proof of their relevance to this case, namely their connection to the crime. Hyland himself was incarcerated at the time that Simmons was shot so he definitely could not have participated directly. ECF No. 56 at 23. The suppressed notes are not rendered material because of the mere possibility that trial counsel could have used them to develop proof that Hyland, Edge or some confederate may have committed the crime. Respondents have found no such evidence of Hyland or Edge's connection to this case, and Simmons has presented none.

The contention that the notes would provide an avenue to impeach the investigation suffers from a similar infirmity to the overall *Brady* claim. The notes did nothing to rebut or diminish the central facts of the case: that Simmons conspired with someone else to lure Talbert into an ambush where Simmons gunned him down. *Id.* at 17–20. All of the evidence of that scheme was provided by Talbert's prior statements recounting what led up to the shooting. The question of *why* Simmons shot Talbert was ancillary and unnecessary to prove the case against Simmons. *Id.* at 19. Cross-examining detectives about their failure to follow-up on Talbert's suspicions about the involvement of Edge and Hyland would lead to the obvious rejoinder that police had everything they needed to convict Simmons because Talbert was an eyewitness to his own shooting. In contrast, the notes acknowledge that Talbert lacked any "firm facts" that Edge or Hyland might have been behind Simmons's shooting Talbert. *Id.* at 15.

While the notes could theoretically have provided a basis for cross-examination of Talbert, doing so would have required trial counsel to jettison his strategy of ignoring Talbert and arguing that he was wholly unreliable. *Id.* at 7–8, 21–22. Talbert was, in fact, impeached by the prosecutor. *Id.* at 4–5. At trial, Talbert disavowed his prior statements implicating Simmons. He was confronted with the three occasions when he accused Simmons of shooting him (a statement he made to the detective, his testimony at the preliminary hearing, and a "hate letter" he acknowledged writing to Simmons). Trial counsel chose not to cross-examine Talbert at all but to instead attack his credibility in closing argument. If trial counsel had asked Talbert about his statements recorded in the notes, that would have rehabilitated Talbert's prior statements to police in general. *Id.* at 22. Given that Talbert's statements in the notes did not contradict his statements that Simmons shot him, the notes would have provided trial counsel with little reason to change strategy.

Moreover, if under cross-examination Talbert had acknowledged refuting his earlier theory about T.I. being behind this shooting, that hypothetical testimony would have been merely cumulative. *See Johnson v. Folino*, 705 F.3d 117, 129 (3d Cir. 2013) ("Suppressed evidence that would be cumulative of other evidence … is generally not considered material for *Brady* purposes."). The Commonwealth actually presented evidence at trial that Talbert had abandoned the T.I. theory by the time of the preliminary hearing. ECF No. 56 at 20. Talbert's preliminary hearing testimony and his "hate letter" to Simmons, each of which were introduced at trial, expressed Talbert's ignorance about Simmons's reason for shooting him. *Id.* at 4–5. The fact that Talbert had initially believed T.I. might have been behind Simmons's shooting him but at another point speculated that two other

4

individuals might have motivated the shooting would have made no difference to the Commonwealth's evidence because the Commonwealth never focused on the motive behind the shooting and presented preliminary hearing testimony and the "hate letter" which made clear that Talbert was unsure of why Simmons wanted to shoot him.

Most critically, if under cross-examination Talbert discussed his theory that Hyland or Edge might have been behind the shooting, that hypothetical testimony would not have called into question the evidence that Simmons was the actual shooter. *Id.* at 17–20. Nothing in the notes refutes the idea that Simmons was part of the conspiracy to ambush and murder Talbert. After making the statements recorded in the notes, Talbert testified at the preliminary hearing that he saw Simmons shoot him and he did not know why. Talbert's statements in the notes are consistent with the fact that Simmons shot Talbert, either on behalf of T.I., Edge, Hyland or for some other reason.

For the foregoing reasons, Respondents respectfully request that this Court sustain these objections and on de novo review deny with prejudice and without a hearing Simmons's claim for habeas relief under *Brady v. Maryland*, 373 U.S. 83 (1963).

/s/ *Andrew Metzger*
Andrew Metzger
Assistant District Attorney
Federal Litigation Unit
Office of the District Attorney
3 South Penn Square
Philadelphia, PA 19107

*Counsel for Respondents*

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JOHNNIE SIMMONS, | : | CIVIL ACTION |
|    Petitioner, | : | |
| | : | |
| v. | : | |
| | : | |
| MARK GARMAN, et al., | : | No. 19–2624 |
|    Respondents. | : | |

CERTIFICATE OF SERVICE

I hereby certify that on this May 8, 2024, a copy of the foregoing objection to the report and recommendation was served on the following counsel for Petitioner via this Court's CM/ECF electronic filing system:

>Claudia Flores
>Assistant Federal Defender
>Federal Community Defender Office for the
>Eastern District of Pennsylvania
>601 Walnut Street
>The Curtis Center, Suite 540 West
>Philadelphia, PA 19106

Respectfully submitted,

/s/ *Andrew Metzger*
Andrew Metzger
Assistant District Attorney
Federal Litigation Unit
Office of the District Attorney
3 South Penn Square
Philadelphia, PA 19107

*Counsel for Respondents*